STEPHEN W. MANNING, OSB # 013373
stephen@innovationlawlab.org
smanning@ilgrp.com
TESS HELLGREN, OSB #191622
tess@innovationlawlab.org
JORDAN CUNNINGS, OSB # 182928
jordan@innovationlawlab.org
NELLY GARCIA ORJUELA, OSB #223308
nelly@innovationlawlab.org
INNOVATION LAW LAB
333 SW 5th Ave., Suite 200
Portland, OR 97204-1748
Telephone: +1 503-922-3042

Attorneys for Petitioner

**UNITED STATES DISTRICT COURT**

**DISTRICT OF OREGON**

**Portland Division**

| | |
|---|---|
| E-M-, an adult, | |
| Petitioner, | Case No. 3:25-cv-01083-SI |
| v. | Agency No. A XXX-XXX-009 |
| DREW BOSTOCK, Seattle Field Office Director, Immigration and Customs Enforcement and Removal Operations ("ICE/ERO");TODD LYONS, Acting Director of Immigration Customs Enforcement ("ICE"); U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; KRISTI NOEM, Secretary of the Department of Homeland Security ("DHS"); U.S. DEPARTMENT OF HOMELAND SECURITY; and PAMELA BONDI, Attorney General of the United States, | **MOTION TO ENFORCE COMPLIANCE WITH COURT ORDER (ECF NO. 4)** |
| Respondents. | |

## CERTIFICATION OF COMPLIANCE WITH LR 7-1

Pursuant to LR 7-1, counsel for Petitioner certifies that they conferred with Respondents' counsel Kevin Danielson, Executive Assistant U.S. Attorney in Portland, on this motion by telephone on June 27, 2025 and June 30, 2025. Mr. Danielson represented that Respondents oppose the Motion.

## MOTION TO ENFORCE COMPLIANCE WITH COURT ORDER (ECF NO. 4)

This is a motion brought under this Court's equitable powers to enforce its own orders and therefore is not a discovery motion under Federal Rules of Civil Procedure ("FRCP") 26–37.

This motion is based on the following Memorandum of Points and Authorities, the accompanying declaration and exhibits, and any other circumstances or documents the Court may properly consider.

On June 24, 2025, the Court entered an order directed at Respondents, paragraph 5 of which states:

> Unless otherwise ordered by the Court, Respondents shall not move Petitioner outside the District of Oregon without first providing advance notice of the intended move. Such notice must be filed in writing and docketed in this proceeding. It also must state the reason that Respondents believe that such a move is necessary. After that notice has been filed on the docket, Petitioner shall not be moved out of the District of Oregon for at least two business days or 48 hours, whichever is later, from the time of the docketing. This period may be shortened or extended as appropriate by further Court Order.
>
> If Respondents already have moved Petitioner outside of the District of Oregon, Respondents are Ordered to notify the Court within two hours of being served with this Order. Respondents are further Ordered to state the exact date and time that Petitioner was transferred out of the District of Oregon and the reason why Respondents believed that such a move was immediately necessary.

Dkt. 4 ("Order") at 4. Petitioner seeks to enforce the Order's directive to the Respondents (1) "to state the exact date and time that Petitioner was transferred out of the District of Oregon" and (2) to provide "the reason why Respondents believed that such a move was immediately necessary."

As explained in the accompanying Memorandum of Points and Authorities, the evidence indicates that the Respondents have failed to state the exact time the Petitioner was transferred out of the district and failed to explain why the move was "immediately" necessary. Because Respondents are in violation of this Court's order, this Court should order their compliance by requiring specific compliance through the submission on the docket of sworn declarations under penalty of perjury as to the exact time the Petitioner was moved out of the district and why the transfer was *immediately* necessary.

**MEMORANDUM OF POINTS AND AUTHORITIES**

### I. FACTUAL BACKGROUND

On June 24, 2025, Petitioner E-M- appeared for an 8:30 AM Master Calendar Hearing at the Portland Immigration Court. Declaration of Emma Kathryn Gill ("Gill Decl."), ¶¶ 6-8. He asked for and received a continuance in the immigration court proceedings considering his asylum application, and the immigration judge set his next hearing for November 12, 2026. *Id.* ¶ 8. After court, E-M- was about to arrive home when the vehicle he was riding was pulled over to the road's shoulder roughly near 8245 SW Canyon Road and taken into custody by plainclothes ICE officers at approximately 9:16 AM. Gill Decl. ¶ 12; Declaration of Mohammad Anwari ("Anwari Decl.") at ¶¶ 8-16. An officer instructed E-M- to exit the car or else the officer would break the car windows. Anwari Decl. ¶ 12. E-M- told the officer that he wanted to speak with his lawyer before saying anything, and the officer told him "you can come with us and speak to your lawyer." *Id.* ¶ 13. At approximately 9:25 AM, E-M- exited the vehicle and was handcuffed by the ICE officers. *Id.* ¶ 14. The officer confirmed to E-M-'s friends in the vehicle that they were taking E-M- "to the big white building downtown." *Id.* ¶ 15. No earlier than 9:25 AM, Respondents transported E-M-

from the arrest location to the ICE Macadam facility, which is approximately 15 minutes from the arrest site. Declaration of E-M- ("E-M- Decl.") ¶ 17.

Shortly after E-M- was taken into custody, Counsel for Petitioner was informed that he had been detained by ICE. *Id*. at ¶ 3. *See* Declaration of Tess Hellgren ("Hellgren Decl.") at ¶ 3. Petitioner's Counsel filed a Petition for a Writ of *Habeas Corpus* on his behalf on or around 9:53 AM. *Id.* at ¶ 4. At approximately 9:55 AM PT, Petitioner's Counsel promptly communicated with the Assistant U.S. Attorney for the District of Oregon, Joshua Keller, to inform him of the filing and that counsel wished to speak with E-M. as soon as possible and before he was transferred out of the District of Oregon. *Id.* at ¶ 5. Contemporaneously, Counsel for Petitioner contacted the Local ICE Field Office and requested to interview E-M- before he was transferred out of Oregon. *Id*. at ¶ 7-8. Assistant U.S. Attorney Joshua Keller advised that he had "immediately reached out to ICE" about Counsel's request. *Id.* at ¶ 9. At approximately 10:20 AM, Petitioner's close friend Mohammad Anwari, who had been with him in the vehicle at the time of his arrest, received a call from E-M- from an unknown number. Anwari Decl. ¶ 17. E-M- asked Mr. Anwari to communicate with his attorney. *Id.*

Meanwhile, at around 10:37 AM, Petitioner's counsel, Nelly Garcia Orjuela, arrived at the gate of the Macadam ICE facility. Declaration of Nelly Garcia Orjuela ("Garcia Orjuela Decl.") ¶ 9. There, she encountered two Federal Protective Services (FPS) officers guarding the open gate, introduced herself and told them she was there to meet with her client E-M-, who had been detained earlier that morning. *Id.* The security guard confirmed that there had been "a couple of men brought in this morning" and he was going to check with the officers. *Id.* He took down E-M-'s name and went to his post to make a call. *Id.* At around 10:44 AM, the security guard informed Ms. Garcia Orjuela that he was advised by the officers that E-M- had been there this morning but that all the

PETITIONER'S MOTION TO ENFORCE COURT ORDER
Page 3

people processed this morning had already left the facility. *Id.* ¶ 10. When asked, the security guard said he did not know the time E-M- left the facility. *Id.* After Ms. Garcia Orjuela asked him if he could confirm the time of departure, an FPS officer stopped him and told him that was not his job and barred him from checking. *Id.* The FPS officer said that at most he could take Ms. Garcia Orjuela's information and pass it along to ICE and that ICE "could reach out if warranted." *Id.* Ms. Garcia Orjuela asked the security guard if he could ask one of the ICE officers to come out so she could speak to them directly and the same FPS officer instructed the security guard "that was not his job either". *Id.* The FPS officer instructed Ms. Garcia Orjuela that she needed to leave. *Id.*

Inside the ICE facility, at the same time Ms. Garcia Orjuela was outside trying to see E-M-, Respondents chained Petitioner and, no earlier than 10:41 AM, attempted to interview him using Google Translate. E-M- Decl. ¶¶ 18-22; Orjuela Decl. ¶¶ 9-11 & Ex. A (Notice of Custody Determination (time-stamped 10:41 AM)). Several minutes later, Respondents moved E-M- from the holding room to the facility parking lot, which took longer as he had ankle cuffs and restrained his ability to normally walk. E-M- Decl. ¶¶ 24-25. Respondents transferred E-M- to a prison van and, minutes after that, Respondents left the ICE Macadam facility. *Id*. ¶¶ 25-27. According to the web mapping service, Google Maps, the shortest approximate travel time from the ICE Facility at Macadam to the Oregon border with Washington state is 12-18 minutes at the approximate time and date of the transfer. *See* Travel Time Directions, Google Maps (Jun. 30, 2025 at 11:30) available at https://maps.app.goo.gl/PRYZsPAhMAKVpkm66 (inputting information for departure at 10:50 AM from 4310 S Macadam Ave, Portland, OR 97239 to the I-5 Oregon border marker). Respondents stopped multiple times on the drive to Tacoma, including one stop that lasted almost thirty minutes. E-M- Decl. ¶ 27. Respondents also stopped on the drive to pick up another person who was arrested. *Id.*

At around 10:58 AM, the U.S. Attorney's Office communicated to Petitioner's Counsel that E-M- had been transferred out of the District of Oregon "at 10:42 AM". Hellgren Decl. ¶ 10.

At 11:07 AM, this Court issued its Order. The Court's Order was served on Respondents' Counsel by e-mail at approximately 11:20 AM. *See* E-mail Correspondence between the Parties and the Courtroom Deputy to the Honorable Michael H. Simon (June 24, 2025).

On or around 11:31 AM, U.S. Attorney Civil Division Chief, Susanne Luse, replied to the Court's e-mail to state that "Petitioner is enroute to the Tacoma ICE facility. They left Oregon at approximately 10:42 a.m." *Id.* Five minutes later, in a subsequent email, Ms. Luse stated that Petitioner was "removed from Oregon to the Tacoma facility because Oregon lacks an ICE detention center." *Id.* To the knowledge of Petitioner's Counsel, at no time on June 24 or since has Respondents' counsel communicated to the Court why Petitioner E-M-'s transfer was "immediately" necessary. Hellgren Decl. ¶ 11.

Immigration and Customs Enforcement has three processing centers in the state of Oregon, where they conduct business and process detainees. *See* U.S. Immigration and Customs Enforcement, Portland, OR, available at https://www.ice.gov/node/62176; U.S. Immigration and Customs Enforcement, Eugene, OR, available at https://www.ice.gov/node/62174; U.S. Immigration and Customs Enforcement, Medford, OR, available at https://www.ice.gov/node/62175. Each location has dedicated meeting rooms and holding cells for use during the day. *See* Garcia Orjuela Decl. ¶ 7.

**II.     ARGUMENT**

Respondents' actions in this case demonstrate that they have failed to comply with the Order and transferred E-M- out of the District of Oregon without reasonable cause, obstructing his access to counsel in the process. At a minimum, the Court should order the relief requested to

PETITIONER'S MOTION TO ENFORCE COURT ORDER
Page 5

ascertain whether Respondents complied with its Order; the available evidence suggests they did not. This Court has equitable authority to enforce its own orders. *U.S v. Yacoubian*, 24 F. 3d 1, 5 (9th Cir. 1994) (citing *Shillitani v. United States*, 384 U.S. 364, 370 (1966)). An exercise of this authority is warranted here, where a party has violated a "specific and definite order of the court." *F.T.C. v. Affordable Media*, 179 F.3d 1228, 1239 (9th Cir. 1999) (quoting *Stone v. City & Cnty. of San Francisco*, 968 F.2d 850, 856 n.9 (9th Cir. 1992)). *Cf. Inst. of Cetacean Rsch. v. Sea Shepherd Conservation Soc.*, 774 F.3d 935, 945 (9th Cir. 2014), *cert. denied*, 576 U.S. 1005 (2015) (moving party must demonstrate violation of "the court's order by clear and convincing evidence" to warrant civil contempt (internal quotation marks omitted)).

### A. Respondents have failed to state the exact time that Petitioner was transferred out of the district.

Respondents have failed to state the exact time that Petitioner was transferred out of the district. Respondents provided an email through counsel, unsupported by a sworn statement from an individual with direct knowledge of the facts, that says in relevant part:

> "Petitioner is enroute to the Tacoma ICE facility. They left Oregon at approximately 10:42 a.m."  Email of counsel, timestamped 11:31 AM June 24, 2025.

This email alone cannot satisfy the Order because it is contradicted by the evidence, including Respondents' own documentation and sworn statements from individuals with direct knowledge of the events. Indeed, the evidence plainly demonstrates that Petitioner was *in* Oregon at 10:42 AM and had not yet left Oregon for Tacoma because Respondent ICE was attempting to have him sign a custody redetermination notice at 10:41 AM. E-M- Decl.¶¶ 18-22, Garcia-Orjuela Decl. Ex. A (Notice of Custody Determination (time-stamped 10:41 AM)). More critically, the evidence suggests that the Petitioner was *in* Oregon at 11:07 AM when this Court issued its Order

PETITIONER'S MOTION TO ENFORCE COURT ORDER
Page 6

prohibiting transfer out of the district without notice and explanation to the Court, further suggesting that the Respondents disobeyed the Order.

The relief requested by this motion seeks to enforce the Order's requirement to state the exact time the Petitioner left the district. Here, the e-mail of Respondent's Counsel fails to do so because it states a time "approximately," which is not what the Order requires. While in other, normal circumstances, an e-mail of this nature could suffice, the approximation provided by Respondents here is plainly wrong. To comply with the Order at this point in time, in the face of the substantial contradictory evidence, the Court should order the individual who drove the prison van with Petitioner incarcerated inside to submit a declaration under penalty of perjury attesting to the time they left the ICE Macadam facility with Petitioner and the time and place they left the District of Oregon. A sworn statement under penalty of perjury from the actual individual who transported the Petitioner is critical given the inconsistencies from the available evidence, which raises doubts about Respondents' actual compliance with the Order.

### B. Respondents have failed to explain the reason why transfer was "immediately" necessary.

Respondents have failed to explain the reason why Petitioner's transfer outside the district of Oregon was "immediately" necessary. Respondents provided an email through counsel, unsupported by a sworn statement from an individual with direct knowledge of the facts, that says in relevant part,

> "[P]etitioner was removed from Oregon to the Tacoma facility because Oregon lacks an ICE detention center." Email of counsel, timestamped 11:35 AM June 24, 2025.

This email alone cannot satisfy the Order because the Order very clearly required Respondents to inform the Court of the reason why Respondents believed this move was "immediately necessary." Respondents have not explained why this transfer was *immediately* necessary. To ask another way,

PETITIONER'S MOTION TO ENFORCE COURT ORDER
Page 7

what was the rush to complete Petitioner's transfer out of the district before E-M- could speak with his lawyers when ICE has a temporary detention facility that routinely holds people for several hours and accommodates access to counsel? Respondents have provided no facts suggesting that providing E-M- an opportunity to speak with his lawyers prior to transfer would have been unreasonable or impacted any ICE operational need, especially since the ICE Macadam facility has rooms available for attorney visitation, routinely accommodates attorney visits, and Petitioner's counsel was on site ready to meet with E-M- without delay. *See* Garcia Orjuela Decl. ¶¶ 7-10. Indeed, such access to counsel was facilitated for a detained noncitizen en route to the Tacoma detention facility earlier this month. *See O-J-M- v. Bostock*, 3:25-cv-00944-AB, Dkt. 17 (D. Or. June 16, 2025).

Respondents' lack of an overnight immigration detention facility in Oregon does not provide a sufficient explanation of why Petitioner's transfer was "immediately necessary", particularly as Respondents were on notice of several pending requests to access counsel. Respondent Immigration and Customs Enforcement routinely holds immigrant detainees for several hours at one of its three holding facilities in the state of Oregon, each of which has dedicated meeting rooms and holding cells for use during the day. *See supra* page 5; Garcia Orjuela Decl. ¶ 7. Therefore, "lack[ing] an ICE detention center" in the state does not, on its own, explain why Petitioner was *immediately* transferred – particularly when Respondents were undeniably on notice that Petitioner sought to access his counsel, *see* Anwari Decl. ¶ 13, and his counsel was seeking to access him, *see* Garcia Orjuela Decl. ¶¶ 9-10; Hellgren Decl. ¶¶ 5-9. Respondents could have held Petitioner at one of its Oregon-based processing centers to allow him to meet with counsel before transfer to a facility with overnight capacity. Indeed, Respondents were at least temporarily detaining E-M- at the Macadam facility – where attorney Nelly Garcia Orjuela was

physically present to seek to speak with him – before transferring him out of the state. Anwari Decl. ¶ 17 Garcia Orjuela Decl. ¶¶ 9-10, 13-14. Respondents were also aware, from recent experience in similar cases, that Petitioner E-M-'s rapid out-of-district transfer to the Tacoma detention facility would likely obstruct his access to counsel. *See* Hellgren Decl. ¶ 5 (citing experience in recent cases in which transfer impeded access to clients "for days"); *Y-Z-L-H- v. Bostock*, 3:25-cv-00965-SI, Declaration of Lindsay Jonasson ¶¶ 5-12 (D.Or. Jun. 17, 2025) (describing ICE's transfer of client out of state while his attorney waited for him in the Portland ICE facility where he had been processed into detention); *Y-Z-L-H- v. Bostock*, 3:25-cv-00965-SI, Declaration of Lynn Stopher ¶ 11 (D.Or. Jun. 17, 2025) (describing "long wait times" and lack of private phone calls at the Tacoma detention facility); *O-J-M- v. Bostock*, 3:25-cv-00944-AB, Declaration of Kathleen Pritchard ¶¶ 17-18 (D.Or. Jun. 6, 2025) (describing access challenges in communicating with client detained at Tacoma).[1]

One way to read Respondents' proffered explanation of lack of "overnight" detention is that Respondents were fleeing the Court's jurisdiction, with Petitioner in the back of their van, because they were anticipating an order similar to the Order that issued in this case, based on similar Orders issued by the Court in at least three other cases earlier this month. *See Y-Z-L-H- v. Bostock*, 3:25-cv-00965-SI, Dkt. 4 (D.Or. June 5, 2025); *N-E-M-B- v. Bostock*, 3:25-cv-00989-SI, Dkt. 4 (D.Or. June 10, 2025*); J-C-R-M- v. Bostock*, 3:25-cv-00990-SI, Dkt. 4 (D.Or. June 10, 2025). Contrary to Respondents' representations through counsel, the evidence here suggests that Respondents might not have made it over the district line in time to avoid this Court's Order

---

[1] Respondents DHS and ICE have elsewhere appeared to engage in not wholly dissimilar practices of rapid district-to-district transfer which have obstructed access to counsel and courts. *See, e.g., Ozturk v. Trump*, 1:25-cv-10695-DJC, Dkt. 42 (D. Mass.) at 2 ("Despite the best efforts of her counsel and, even the Turkish consulate to determine her whereabouts, the government did not disclose her place of confinement until approximately 3:27 p.m. the following day[.]"); *id.* at 4 (detailing rapid ICE transfers from district to district).

PETITIONER'S MOTION TO ENFORCE COURT ORDER
Page 9

pausing Petitioner's out-of-state transfer. *See supra* part I, pp. 3-4. In any event, it is anathema to the rule of law that the Executive Branch should seek to engage in such behavior when its sole purpose is to faithfully execute the laws of the United States, including the First and Fifth Amendment rights to counsel. U.S. Const. Art. II, Sec. 3. To the extent that Respondents sought relief from the Order, the Order already provided that opportunity through an orderly, diligent process, such that Respondents would not need to resort to literally seeking to outrun the law. Dkt. 4 (ordering Respondents "not to move Petitioner outside the District of Oregon without advance notice to the Court"). "Stated simply, what it means to have a system of government that is bounded by law is that everyone is constrained by the law, no exceptions." *Trump v. CASA, Inc*, 2025 WL 1773631, at *44 (U.S. June 27, 2025) (Jackson, J. dissenting).[2]

### C. This Court should order specific compliance with its Order.

In the present case, this Court issued a very clear order to Respondents that took into account the importance of Petitioner's physical location and the timing of his transfer in maintaining jurisdiction over his claims and maintaining Petitioner's access to the courts. Dkt. 4 at 2-4. Respondents moved Petitioner out of the District of Oregon, despite knowing – from both Petitioner and his Counsel's requests – that he was seeking to access counsel. The Court should order specific compliance with its Order in the form of a declaration, sworn under penalty of

---

[2] Respondents are creations of law and do "not stand above or outside the law" which means they must obey *all* the laws *all* the time. *Casa, Inc.*, 2025 WL 1773631, at *46 (Jackson, J., dissenting). While this fundamental principle should be axiomatic even when Respondents are not being sued, *but see id.*, they are being sued here. The laws that bind them are more than just the law of deportation, which (like the Executive Branch) does not rise above any other law; rather, Respondents are simultaneously bound by and must appropriately yield to other laws such as 5 U.S.C. § 555(b) (providing that a "person compelled to appear in person before an agency or representative thereof is entitled to be accompanied, represented, and advised by counsel"), 8 C.F.R. § 292.5(b) (same), and always the First and Fifth Amendments of the U.S. Constitution. Moreover, as civil detention cannot be wielded as punishment, *see Addington v. Texas*, 441 U.S. 418, 427 (1979), it may only be applied when it is justified in the case of flight risk or danger to the community, *see Matter of Guerra*, 13 I&N Dec. 40 (BIA 1968).

perjury and filed on the public docket, as to both (i) the exact time Respondents took Petitioner out of the district and (ii) why they could not accommodate access to counsel – that is, why it was "immediately" necessary to transport the Petitioner out of state without first affording him his First and Fifth Amendment rights to counsel.

### III.    CONCLUSION

Respondents have not complied with the Court's Order because they have failed to provide the exact time the Petitioner was transferred out of the district and have failed to explain why Petitioner's out-of-district transfer was "immediately necessary." Therefore, the Court should require Respondents to specifically comply and order the relief described below.

### STATEMENT OF RELIEF SOUGHT

WHEREFORE, Petitioner respectfully moves for an order compelling Respondents to comply with this Court's June 24 Order by:

(1) Ordering Respondents to file on the public docket the Luse e-mails sent to the Court at 11:31 AM and 11:36 AM;

(2) Ordering Respondents to identify, in a filing on the docket, the name of the individual who transported Petitioner out of the District of Oregon;

(3) Ordering the individual who transported Petitioner out of the District to submit a sworn statement under penalty of perjury as to the time they departed the ICE Macadam facility and the time they left the district, and identifying the location of the departure point from the district;

(4) Declaring that Respondents' failure to explain why Petitioner's transfer outside the District of Oregon was "immediately necessary" violated the Court's Order;

(5) Ordering Respondents to provide their reasoning in a sworn declaration under penalty of perjury filed on the docket as to why they believe that transferring Petitioner outside the District of Oregon was "immediately necessary";

(6) Grant any further relief this Court deems just and proper.

Dated:  June 30, 2025.

*/s/ Stephen W Manning*
STEPHEN W. MANNING, OSB # 013373
stephen@innovationlawlab.org
TESS HELLGREN, OSB #191622
tess@innovationlawlab.org
JORDAN CUNNINGS, OSB # 182928
jordan@innovationlawlab.org
NELLY GARCIA ORJUELA, OSB #223308
nelly@innovationlawlab.org
INNOVATION LAW LAB
333 SW 5th Ave., Suite 200
Portland, OR 97204-1748
Telephone: +1 503-922-3042

*Attorneys for Petitioner*
