IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **E-M-**, an adult, | Case No. 3:25-cv-1083-SI |
| Petitioner, | Agency No. AXXX-XXX-009 |
| v. | **ORDER** |
| **DREW BOSTOCK**, et al., | |
| Respondents. | |

**Michael H. Simon, District Judge.**

Petitioner E-M-, a citizen of Afghanistan, seeks protection in the United States after suffering severe injuries from the Taliban because Petitioner is Shia and a Hazara. Petitioner was released into the United States on August 5, 2023, on an Order of Release on Recognizance under 8 U.S.C. § 1226(a). Respondents commenced removal proceedings under 8 U.S.C. § 1229a. After Petitioner applied for asylum and Temporary Protected Status, he received a *prima facie* determination of eligibility on his pending Application for Temporary Protected Status by U.S. Citizenship and Immigration Services.

On June 24, 2025, Petitioner attended his immigration court hearing and received a continuance of his court proceedings until November 12, 2026. While driving home from immigration court, Petitioner was arrested by agents from Respondent U.S. Immigration and Customs Enforcement ("ICE"). That same day, at 9:53 a.m., he filed in this Court a Petition for

PAGE 1 – ORDER

Writ of Habeas Corpus ("Petition"). ECF 1. The Court entered an order at 11:07 a.m., requiring that Respondents not remove Petitioner from the District of Oregon without providing two business days' notice to the Court and to notify the Court within two hours if Respondents already had moved Petitioner outside the District of Oregon. ECF 4.

At 11:32 a.m., counsel for Respondents notified the Court via email that Petitioner was "enroute to the Tacoma ICE facility" and had "left Oregon at approximately 10:42 a.m." In their response to the Petition, Respondents provided the Declaration of Timothy Walsh, a deportation officer. ECF 19. Mr. Walsh states that Petitioner was determined to be a flight risk, arrested in Portland, booked at the Portland holding facility, taken from the Portland facility at approximately 10:41 a.m. by a different officer,[1] and went with that officer to Ridgefield, Washington because the Portland office was only conducting initial intake processing for "security reasons" due to the "extremely disruptive" and "sometimes violent" protests at the Portland ICE facility. *Id.* Petitioner waited in Ridgefield until private contractors could take him to the ICE facility in Tacoma. *Id.*

Petitioner has concerns and skepticism about the veracity of Mr. Walsh's declaration, particularly with respect to the timing of Petitioner's removal from the Court's jurisdiction and the process by which Petitioner was removed, sent to Ridgefield, and then sent to Tacoma. Because Respondents rely on Mr. Walsh's declaration as evidence of Respondents' authority to detain Petitioner, his veracity is relevant to Petitioner's "core" habeas challenge.

---

[1] Mr. Walsh notes that previously it was believed that Petitioner entered Washington State at 10:42 a.m. because it was believed that he left the Portland facility at 10:20 a.m., but according to Mr. Walsh, Petitioner appears to have actually left the Portland facility at 10:41 a.m. ECF 19.

PAGE 2 – ORDER

On August 12, 2025, the Court found good cause and allowed Petitioner to take limited discovery. ECF 28. In filing for limited discovery, Petitioner had included his proposed requests for production, interrogatories, and deposition witnesses, including a Rule 30(b)(6) deposition and topics, in the motion. The Court ordered Respondents "to respond fully to Petitioner's discovery requests and to complete the requested depositions" within 30 days.

On September 9, 2025, Petitioner filed a motion to compel the ordered discovery, asserting that as of that date, Respondents had not produced a single document or responded to the interrogatories and instead responded to Petitioner's written discovery with objections, and had refused to negotiate any deposition dates. On September 23, 2025, Respondents responded to the motion to compel, asserting that they produced some documents after Petitioner filed his motion to compel, arguing that the remainder of the documents were irrelevant and otherwise not discoverable, the interrogatories were irrelevant, and Petitioner had not issued any deposition subpoenas.

Based on Respondents' brief in opposition to the Motion to Compel, it appears that Respondents have produced the nonprivileged documents in their possession, custody, and control in response to Request for Production ("RFP") Nos. 1, 2, 4, 5, 6, 8, 10, and 11. For RFP No. 12, Respondents contend that the only responsive documents are in the public domain and equally accessible to Petitioner, and provide the link.[2] The Court addresses the remaining RFPs (Nos. 3, 7, 9, and 13), the requested depositions, and the requested interrogatories in this Order.

When a party fails to provide requested discovery, the requesting party may move to compel that discovery. *See* Fed. R. Civ. P. 37(a). The burden is on the party resisting discovery

---

[2] Petitioner may renew his motion to compel if he disagrees with the representations of Respondent regarding the documents produced in response to these RFPs.

PAGE 3 – ORDER

to show why a discovery request should be denied. *See Moose Hills, LLC v. Enel Kansas, LLC*, 2023 WL 3437189, at *4 (E.D. Cal. May 12, 2023) ("If the request is proper, the party resisting discovery has the burden of showing why discovery was denied; they must clarify and support their objections."). The party resisting discovery also must "specify[] in detail, as opposed to general and boilerplate objections, why 'each request is irrelevant.'" *Playstudios, Inc. v. Centerboard Advisors, Inc.*, 2019 WL 8128148, at *1 (D. Nev. Apr. 18, 2019) (quoting *FTC v. AMG Servs.*, 291 F.R.D. 544, 553 (D. Nev. 2013)) (alteration added).

The Court rejects Respondents' relevancy arguments. Most of the objected-to documents, interrogatories, and depositions go to the facts stated in Mr. Walsh's declaration, which Petitioner disputes. Mr. Walsh's truthfulness is relevant to Respondents' authority to detain Petitioner, because Respondents rely on Mr. Walsh's declaration. This includes nonprivileged documents in Respondents' possession, custody, and control responsive to RFP No. 7.

Respondents further object that Petitioner is not entitled to his ICE files, requested in RFP Nos. 3 and 9. Respondents argue that producing Petitioner's file from the Northwest ICE Processing Center in Tacoma in discovery is "unnecessary" because Petitioner has the right to obtain that information. That Petitioner can obtain that file through a Freedom of Information Act ("FOIA") or other request, however, is not dispositive of whether that information should be produced in discovery. Petitioner contends that he needs this information to file his reply. It is unlikely that he could obtain it in a timely manner through a FOIA or other request. Respondents do not contend that this information is not in their possession, custody, or control, or object on other grounds. Thus, Respondents must produced nonprivileged documents in their possession, custody, or control responsive to RFP No. 9.

Respondents argue that Petitioner is not entitled to his ICE records maintained in the ordinary course of business and cited by Mr. Walsh as the records on which he relied in preparing his declaration because they "may be" irrelevant and not proportional to the needs of the case considering the burden and the parties resources. Other than a boilerplate objection, Respondents offer no details. The Court disagrees that these records, relied on by Mr. Walsh, are irrelevant. And Respondents offer no support about why producing this information is irrelevant, burdensome, or not proportional. Generally asserting these types of objections is insufficient, without more, to sustain the objection. *See, e.g.*, *Playstudios*, 2019 WL 8128148, at *1 (stating that a party must specify in detail why a request is irrelevant); *Shakespear v. Wal-Mart Stores, Inc., LLC*, 2012 WL 13055159, at *3 (D. Nev. Nov. 5, 2012) (rejecting objection that production was burdensome because "general objections do not provide sufficient detail regarding the time, money, and procedures required to produce the requested information"). Thus, Respondents must produce all nonprivileged documents in their possession, custody, and control responsive to RFP Nos. 3.

Finally, Respondents object to producing security video footage from the perimeter of the Portland ICE facility from 9 a.m. to 12 noon on June 24, 2025. Respondents contend that producing this footage would cause serious security concerns, although Respondents do not explain how producing this information as "Confidential" under the Protective Order would create a security concern. Respondents also argue that this information is in the possession, custody, and control of the Federal Protective Services and that Respondents would have to hire an outside consultant to obtain the footage and to redact the faces of other visitors and detainees during the requested period. Respondents argue that this information is irrelevant and unduly burdensome, particularly when venue in this Court has been conceded.

This request appears directed at obtaining the specific timing relating to Petitioner's detention and transport, to test the veracity of Mr. Walsh's declaration. Other requests by Petitioner, however, may provide similar information in a less burdensome manner, such as depositions and documents. The Court thus denies this portion of Petitioner's motion, relating to RFP No. 13, without prejudice to renew at a later date after receiving the remaining production and taking the requested depositions.

Regarding the interrogatories and percipient witness depositions, in addition to the relevancy concerns addressed above, Respondents also argue that disclosing information relating to ICE officers' identities and the Ridgefield transport location would endanger those officers and ICE operations. Respondents may designate this information as "Confidential" under the Protective Order in this case. In light of the Court's conclusions regarding Respondents' relevancy objection and security concerns, Respondents must respond to the interrogatories and schedule the requested percipient witness depositions.

Regarding the requested Rule 30(b)(6) depositions, Respondents add that Petitioner is not entitled to the deposition because Petitioner had not yet issued a subpoena. The Court rejects this argument. Petitioner provided a description of the requested topics in Petitioner's motion to compel limited discovery. Petitioner then attempted to negotiate a mutually agreeable time for the Rule 30(b)(6) deposition(s). Respondents were aware of the topics and easily could have identified the witness(es) and negotiated a mutually agreeable time so that Petitioner could issue a subpoena that would be agreeable to both parties (or Respondents could forego the subpoena requirement, given the expedited timeframe ordered by the Court and the fact that Respondents already knew the topics). The Court expects the parties to work together in good faith and not place form over substance, particularly during expedited discovery. *Cf. Sali v. Corona Reg'l*

*Med. Ctr.*, 884 F.3d 1218, 1219 (9th Cir. 2018) ("The discovery process in theory should be cooperative and largely unsupervised by the district court.").

The Court previously ordered all production and depositions to be completed by September 12, 2025, and Petitioner's reply to be filed by October 14, 2025. Because Respondents did not complete the production and depositions within the original timeline, the Court will adjust those deadlines.

The Court GRANTS IN PART AND DENIES IN PART Petitioner's Motion to Compel, ECF 29, as discussed herein. The Court extends the discovery deadline to October 10, 2025, and extends Petitioner's reply to November 10, 2025.[3]

**IT IS SO ORDERED.**

DATED this 24th day of September, 2025.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge

---

[3] These deadlines may be adjusted if Respondents encounter an interruption in operations on October 1, 2025.

PAGE 7 – ORDER