# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **E-M-**, an adult, | Case No. 3:25-cv-1083-SI |
| Petitioner, | **OPINION AND ORDER** |
| v. | |
| **LAURA HERMOSILLO**,[1] Acting Seattle Field Office Director, Immigration and Customs Enforcement and Removal Operations; **TODD LYONS**, Acting Director of Immigration Customs Enforcement; **U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT**; **MARKWAYNE MULLIN**,[2] Secretary of the Department of Homeland Security; **U.S. DEPARTMENT OF HOMELAND SECURITY**; and **PAMELA BONDI**, Attorney General of the United States, | |
| Respondents. | |

Stephen W. Manning, Tess Hellgren, Jordan Cunnings, and Nelly Garcia Orjuela, INNOVATION LAW LAB, 333 SW Fifth Avenue, Suite 200, Portland, OR 97204. Of Attorneys for Petitioner.

Scott E. Bradford, United States Attorney; and Susanne Luse, Assistant United States Attorney, UNITED STATES ATTORNEY'S OFFICE, 1000 SW Third Avenue, Suite 600, Portland, OR 97204. Of Attorneys for Respondents.

---

[1] Laura Hermosillo is substituted for originally-named Defendant Drew Bostock under Rule 25(d) of the Federal Rules of Civil Procedure.

[2] Markwayne Mullin is substituted for originally-named Defendant Kristi Noem under Rule 25(d) of the Federal Rules of Civil Procedure.

PAGE 1 – OPINION AND ORDER

**Michael H. Simon, District Judge.**

Petitioner E-M-, a citizen of Afghanistan, seeks protection in the United States after suffering severe injuries from the Taliban because Petitioner is Shi'a and a Hazara. Petitioner was released into the United States on August 6, 2023, on an Order of Release on Recognizance ("OREC") under 8 U.S.C. § 1226(a). Respondents commenced removal proceedings under 8 U.S.C. § 1229a, which entitled Petitioner to due process rights. After Petitioner applied for asylum and Temporary Protected Status ("TPS"), he received a *prima facie* determination of eligibility on his pending Application for TPS by U.S. Citizenship and Immigration Services.

On June 24, 2025, Petitioner attended his immigration court hearing and received a continuance of his court proceedings until November 12, 2026. While driving home from immigration court, Petitioner was arrested by agents from Respondent U.S. Immigration and Customs Enforcement ("ICE").

Shortly after his arrest, Petitioner filed a Petition for Writ of Habeas Corpus ("Petition"). ECF 1. Sixty-seven minutes after Petitioner filed his Petition, the Court entered an Order requiring that Respondents not move Petitioner out of the District of Oregon without providing advance notice to the Court. ECF 4. The Court also required Respondents to notify the Court if they already had relocated Petitioner, state the exact time Petitioner was transferred out of the District, and explain why Respondents believed such a move was immediately necessary. *Id.* Respondents notified the Court by email that they had moved Petitioner out of the District approximately 25 minutes before the Court entered its Order, without further explanation. *See* ECF 28 at 2 (describing email). Respondents then sent a second email stating that Petitioner was moved out of the District because Oregon does not have an ICE detention facility. The next day, June 25th, Petitioner was released from custody based on his TPS designation.

PAGE 2 – OPINION AND ORDER

On June 30th, Petitioner filed a Motion to Enforce Compliance with the Court's Order ("Motion"), arguing that Respondents failed sufficiently to provide the exact time Petitioner was moved out of the District. Petitioner provided facts disputing the time presented by Respondents about when Petitioner left the District of Oregon. Petitioner also argued that Respondents failed to explain why they believed the move was immediately necessary. Petitioner originally requested several forms of relief, but in his reply requested only that the Court order Respondents to file a statement under oath explaining why Respondents believed moving Petitioner out of the District was immediately necessary, plus any additional relief the Court finds necessary and appropriate. This Motion is pending before the Court.

Also pending before the Court is Petitioner's Petition. Petitioner now asks the Court to grant his Petition only on Count Three, which alleges that his detention violated his Fifth Amendment due process rights. Respondents raise only one argument in response to the Petition, challenging the Court subject matter jurisdiction over this case because Respondents have released Petitioner from custody. Respondents do not challenge Count Three on the merits and thus the Court finds that Respondents have waived any such challenge and conceded those

aspects of Count Three of the Petition.[3] For the following reasons, the Court rejects the government's jurisdiction argument and grants the Petition on Count Three.[4]

BACKGROUND

## A. Habeas Corpus Petitions Under 28 U.S.C. § 2241

Under 28 U.S.C. § 2241, federal district courts "within their respective jurisdictions" have the authority to hear applications for habeas corpus by any person who claims to be held "in custody in violation of the Constitution or laws or treaties of the United States." The "essence of habeas corpus is an attack by a person in custody upon the legality of that custody," and thus to be within the "core of habeas corpus," a petitioner must seek "either immediate release from that confinement or the shortening of its duration." *Preiser v. Rodriguez*, 411 U.S. 475, 484, 489 (1973).

## B. Factual Background

Petitioner is a native of Afghanistan, who was persecuted due to his religion as a Shi'a Muslim and because of his Hazara ethnicity. First Declaration of Petitioner ("First Decl.") ¶¶ 2-3

---

[3] *See N-E-M-B v. Wamsley*, 2025 WL 3527111, at *1 (D. Or. Dec. 9, 2025) ("Respondents do not challenge any aspect of the Petition on the merits and thus the Court finds that Respondents have waived such challenges and conceded those aspects of the Petition."); *Soleimani v. Larose*, 2025 WL 3268412, at *3 (S.D. Cal. Nov. 24, 2025) ("On the claims Petitioner does raise, namely an unlawful search and seizure claim under the Fourth Amendment, an unlawful detention claim under the APA, and a procedural due process claim under the Fifth Amendment, Respondents' answer to the Petition is silent. By failing to respond to the claims actually asserted, Respondents have conceded the claims. With that concession, and given the undisputed facts of this case, the Court grants the Petition." (citations omitted)); *see also Ramirez v. Ghilotti Bros. Inc.*, 941 F. Supp. 2d 1197, 1210 & n.7 (N.D. Cal. 2013) (collecting cases holding that a party concedes an argument by failing to respond to it); *Angeles v. U.S. Airways, Inc.*, 2013 WL 622032, at *4 (N.D. Cal. Feb. 19, 2013) ("The failure to respond amounts to a concession.").

[4] As discussed below, even if one statement in Respondents' response brief could be construed as an argument on the merits, this argument fails and the Court grants Count Three of the Petition on the merits.

PAGE 4 – OPINION AND ORDER

(ECF 11). The Taliban and other extremist groups attack people with his background. *Id.* ¶ 3. He was hospitalized as a result of such an attack. *Id.* His parents were also threatened and imprisoned by the Taliban. *Id.*

Petitioner came to the United States in 2023 seeking refuge. He entered the country on approximately August 5, 2023. *Id.* ¶ 4. He was briefly detained by Respondents and was released through an OREC. Second Declaration of Petitioner ("Sec. Decl.") ¶ 4 and Ex. A (ECF 42, 42-1). This document established specific conditions of release. ECF 42-1 at 1. It also included as a condition that he must "report . . . [a]s indicated on the attached OREC G-56." *Id.* That form required him to generally report on August 6, 2024, but also to report as directed under the Intensive Supervision Appearance Program ("ISAP") on February 12, 2024.

Petitioner complied with the required rules as he understood them, and to the best of his ability. First Decl. ¶ 5; Sec. Decl. ¶ 4. He applied for TPS on July 11, 2024, and received a *prima facie* determination on that pending application. *See, e.g.* Sec. Decl. Ex. B; Declaration of Timothy Walsh ("Walsh Decl.") ¶ 20 (ECF 19). Petitioner also received an employment authorization card based on his TPS designation, valid from July 20, 2024, through May 20, 2025. Sec. Dec. Ex. C. Petitioner additionally applied for asylum within the statutory deadline. First Decl. ¶ 5. He attended all required court hearings and ICE appointments. *Id.*

Petitioner enrolled in ISAP's Alternatives to Detention ("ATD") program as required, which uses an application on his phone. Sec. Decl. ¶ 5; Walsh Decl. ¶ 4. But because the application is in English, which is not Petitioner's first language, he did not fully understand it. Sec. Decl. ¶ 5. The reporting timing, during work hours, also make it difficult for him to report precisely on time due to access issues, although he followed instructions to relay his difficulties as soon as he was in range of a cell or wireless signal and was able to report. Sec. Decl. ¶¶ 6-8.

PAGE 5 – OPINION AND ORDER

Other than one occasion in January 2025, Petitioner does not recall receiving any notification regarding missing check-ins. *Id.* ¶ 9. He even went to the ISAP offices on September 17, 2024 to discuss a change to his reporting schedule with his ISAP Officer, and no one mentioned any missing check-ins or concerns with Petitioner's check-ins. *Id.* ¶ 10. In mid-December 2024, he contacted his ISAP Officer to ask for permission to leave Oregon. *Id.* ¶ 11. His request was approved and his ISAP Officer made no mention of missing check-ins. *Id.* Respondents, however, contend that more than half of Petitioner's purported missed check-ins occurred between July 1, 2024 and September 2, 2024. Walsh Decl. ¶¶ 5-8.

Petitioner attended a hearing before the immigration court in Portland at 8:30 a.m. on June 24, 2025. First Decl. ¶ 6. He was accompanied by a volunteer attorney. *Id.* ¶¶ 6-8. The immigration judge continued Petitioner's hearing for November 12, 2026. *Id.* ¶ 9. He left with a friend and was nearly home when two cars turned on police lights and pulled them over. *Id.* ¶ 11. The vehicles were unmarked and the men in the vehicles were not in uniform. *Id.* ¶ 12. The men showed badges and stated they were from ICE. *Id.* Petitioner texted his lawyer and everyone in the car provided identification as requested by the officers. *Id.* ¶¶ 13-14.

One officer demanded that Petitioner go with the officers. *Id.* ¶ 14. Petitioner stated that he wanted his lawyer present. The officer responded that if Petitioner did not go with the officers, they would break the car window and drag Petitioner out. *Id.* Frightened, and reminded of the Taliban in Afghanistan, Petitioner went with the officers. *Id.* ¶ 15.

The ICE officers handcuffed Petitioner and took him to the ICE building, where they chained his feet and waist and took his belongings. *Id.* ¶¶ 17-19. He was "booked into" the facility at around 9:50 a.m. Walsh Decl. ¶ 13; *see also* First Decl. ¶¶ 11-17 (describing the encounter leading up to entering the ICE building, with some time estimates). Petitioner asked

for an interpreter and for his lawyer. First Decl. ¶ 21. The officers provided Petitioner with neither. After waiting several minutes, he was interrogated, and he refused to sign documents that were not explained to him in his native language or translated. *Id.* ¶¶ 20-22. There were several agents, and using Google Translate, they threatened to force him sign. *Id.* ¶ 22. He asked for a telephone to call his lawyer but the officers never provided one. *Id.* Petitioner was required to wait again and then he was taken, still with his legs cuffed, to a parking garage. *Id.* ¶ 24. He asked what was happening and was told through "garbled" Google Translate that he was arrested and he would get a letter explaining everything. *Id.* ¶ 25. He never got that letter. *Id.* ¶ 28.

After waiting awhile, Petitioner was put in a vehicle, still in leg cuffs, and driven to the ICE detention facility in Tacoma, Washington. There were multiple stops and long waiting periods along the way. *Id.* ¶¶ 24-28.

At 9:53 a.m. on June 24th, Petitioner, through counsel, filed his Petition with this Court. ECF 1. Immediately thereafter, counsel for Petitioner emailed the Petition to and called the U.S. Attorney's Office to notify Respondents' counsel that counsel for Petitioner wanted to speak with Petitioner before he was removed from the District of Oregon, based on difficulties in reaching previous clients who had been removed. *See* Declaration of Tess Hellgren ("Hellgren Decl.") ¶¶ 5-6. (ECF 15). Petitioner's counsel also emailed ICE officer Jeffrey Chan, head of the Portland field office, at 10:16 a.m., requesting to speak with Petitioner. *Id.* ¶ 7; Declaration of Nelly Garcia Orjuela ("Garcia Orjuela Decl.") ¶ 6 (ECF 12). Mr. Chan responded at 10:30 a.m. that he would "check the status" of Petitioner. Hellgren Decl. ¶ 8. At 10:37 a.m., Ms. Garcia Orjuela arrived at the ICE facility and requested to see Petitioner. Garcia Orjuela Decl. ¶ 9. At 10:39 a.m., Assistant U.S. Attorney Josh Keller responded to Ms. Hellgren that Mr. Keller had "immediately" reached out to ICE about Petitioner. Hellgren Decl. ¶ 9. Yet despite all of these

PAGE 7 – OPINION AND ORDER

requests for communication by Petitioner's counsel, Respondents rushed Petitioner out the door at around 10:41 a.m., shortly after Mr. Chan had promised to look into matters, Ms. Garcia Orjuela had arrived on site, and Assistant U.S. Attorney Keller had assured Petitioner's counsel that he had communicated their wishes to ICE.

The Court entered an order at 11:07 a.m., requiring that Respondents not remove Petitioner from the District of Oregon without providing two business days' notice to the Court and to notify the Court within two hours if Respondents already had moved Petitioner outside the District of Oregon. ECF 4. This Court and other judges in this District have routinely entered similar orders in these type of habeas cases. Respondents are well aware of this requirement and knew about it at the time this case was filed. Indeed, the Court had ordered three similar orders in other cases before issuing this Order. *See Y-Z-L-H- v. Bostock*, Case No. 3:25-cv-965-SI, Order dated June 5, 2025, ECF 4; *N-E-M-B- v. Hermosillo*, Case No. 3:25-cv-989-SI, Order dated June 10, 2025, ECF 4; *J-C-R-M- v. Hermosillo*, Case No. 3:25-cv-990-SI, Order dated June 10, 2025, ECF 4. At 11:32 a.m., counsel for Respondents notified the Court via email that Petitioner was "enroute to the Tacoma ICE facility" and had "left Oregon at approximately 10:42 a.m."

Walsh states in his Declaration that Petitioner actually left the Portland *ICE facility* at approximately 10:41 a.m., not the District of Oregon. Assuming average driving time of 15 minutes to the Oregon-Washington border, Petitioner would have left the District of Oregon around 10:56 a.m., about 10 minutes before the Court's Order forbidding Respondents from removing Petitioner from the District.

The next day, June 25, 2025, Petitioner was released on a new OREC, with new and more onerous conditions. Sec. Decl. Ex. D. Also on that date, Petitioner's original OREC was cancelled, with the reason for cancellation marked, "The alien was taken into custody for

PAGE 8 – OPINION AND ORDER

removal," as opposed to "The alien failed to comply with the conditions of release." *Id.* Ex. E. Petitioner was released after Respondents realized his TPS designation, Walsh Decl. ¶ 20, which Respondents could have discovered the previous day in Portland had they allowed Petitioner's attorney to participate as requested during the booking process.

## DISCUSSION

### A.  Whether the Court Has Jurisdiction to Review This Matter

Respondents argue that the Court lacks jurisdiction to review this matter because Respondents have already released Petitioner from custody. Respondents contend that now that Petitioner no longer is in custody, this case falls outside the core of habeas because the case no longer seeks to release Petitioner from confinement, quoting *Preiser* and *Pinson v. Carvajal*, 69 F.4th 1059, 1072 (9th Cir. 2023). Petitioner, however, was confined at the time he filed his Petition and is seeking release based on alleged unlawful confinement. Thus, his case is unlike *Pinson* and goes to the "core" of habeas as defined by the Supreme Court in *Preiser*. *See* 411 U.S. at 489; *see also Trump v. J. G. G.*, 604 U.S. 670, 672 (2025) ("Regardless of whether the detainees formally request release from confinement, because their claims for relief 'necessarily imply the invalidity' of their confinement and removal under the [Alien Enemies Act], their claims fall within the 'core' of the writ of habeas corpus and thus must be brought in habeas." (quoting *Nance v. Ward*, 597 U.S. 159, 167 (2022)).

In *Pinson*, the petitioners were challenging conditions of their confinement during the COVID-19 pandemic. After considering "whether, based on the allegations in the petition, release is *legally required* irrespective of the relief requested," the Ninth Circuit determined that it was not. *Pinson*, 69 F.4th at 1072-75 (emphasis in original). Thus, the case was not reviewable in habeas. *Id.* at 1075. Indeed, the court in *Pinson* emphasized that "[r]elease is the only available remedy—and thus a claim is at the core of habeas—if a successful petition demonstrates that the

PAGE 9 – OPINION AND ORDER

*detention itself* is without legal authorization." *Id.* at 1070 (emphasis in original). That is precisely what Petitioner here is arguing in his Petition.

Petitioner remains "in custody" for purposes of § 2241 because he challenges Respondents' decision to revoke his conditional parole and *detain him*. Petitioner argues his redetention was unlawful because it was without notice, an opportunity to be heard, a bond hearing, or even a proper individualized determination of flight risk by an authorized official. *See Jimenez v. Bostock*, 2025 WL 2430381, at *3 (D. Or. Aug. 22, 2025) ("Here, Petitioner alleges that the revocation of his release from custody without an individualized determination—made by an authorized official—that he is a danger to the community or a flight risk violated the APA [Administrative Procedure Act] and his right to procedural Due Process under the Fifth Amendment. These claims for relief, which are focused on statutory and regulatory provisions relating to custody decisions, squarely address the validity of Petitioner's confinement in the first place, not the conditions of it. . . . A review of all the Claims for Relief, including the legal basis for them, squarely relate to the validity of Petitioner's confinement. That Petitioner prays for additional relief beyond the custody issue does not change the fact that the crux of the Petition is that the revocation of his release violated the law." (citation omitted)).

Further, Respondents released Petitioner based on his TPS designation and state that they believe they can redetain Petitioner after July 2025 because his TPS designation will then be expired. They also released him on terms different and more restrictive than his original release. These circumstances create "collateral consequences." *See, e.g.*, *Abdala v. I.N.S.*, 488 F.3d 1061, 1064-65 (9th Cir. 2007) (describing the "collateral consequences" doctrine, where so long as a petitioner was in custody at the time a petition was filed and remains subject to actual collateral consequences that the petition could successfully address, his petition remains live); *Devitri v.*

PAGE 10 – OPINION AND ORDER

*Cronen*, 290 F. Supp. 3d 86, 90 (D. Mass. 2017) (finding habeas jurisdiction proper where the petitioners "challenge[d] a condition of their custody, specifically, ICE's abrupt change in policy regarding participants in Operation Indonesian Surrender and the unfairly compressed timetable of the issuance of the Denials of Stays and/or Notices of Revocation of Release." (cleaned up)). Thus, Petitioner remains in Respondents' "custody" despite his release.

## B.  Merits of the Petition

### 1.  Granted As Unopposed

Because Respondents have not contested the merits of the Petition, the Court grants the Petition, as narrowed by Petitioner in his reply to Count Three.[5] The Court finds as unrebutted that Respondents violated Petitioner's due process rights. Respondents released Petitioner on his own recognizance, thereby finding that he was not a flight risk or a danger to the community. *See Palacios v. Hermosillo*, 2026 WL 686138, at *10 (W.D. Wash. Mar. 11, 2026) ("Indeed, Petitioners' release on parole or on their own recognizance could only have occurred if the Government affirmatively found that they were not a danger to society or a flight risk."). Respondents then unlawfully revoked that conditional parole and detained him without due process, or a sufficient finding of a change in circumstances, that he was a danger or that he was a flight risk. *See Faizyan v. Casey*, 2025 WL 3208844, at *6-8 (S.D. Cal. Nov. 17, 2025) (gathering cases); *see also Salazar v. Casey*, 2025 WL 3063629, at *5 (S.D. Cal. Nov. 3, 2025) ("[B]ecause Respondents detained Petitioner by revoking her parole in violation of the Due Process Clause, her detention is unlawful.").

---

[5] The Court expresses no opinion on the merits of any other count alleged in the Petition.

PAGE 11 – OPINION AND ORDER

## 2. Granted Even if Opposed

Respondents make a single statement in the section of their Response titled, "Supplemental Information for the Court," that Respondents may lawfully redetain Petitioner "based on his prior violations." Respondents, however, present no argument about how this fact, even if true, requires the Court to deny the Petition and offer no authority for such a proposition. A court is not "required to address perfunctory and undeveloped arguments" *Consumer Fin. Prot. Bureau v. Noh*, 2022 WL 20581960, at *2 (C.D. Cal. Jan 18, 2022) (quoting *Khademi v. S. Orange Cnty. Cmty. Coll. Dist.*, 194 F. Supp. 2d 1011, 1027 (C.D. Cal. 2002)); *accord Ventress v. Japan Airlines*, 747 F.3d 716, 723 n.8 (9th Cir. 2014) (declining to address an "undeveloped argument . . . not supported by citations to the record, argument, or any legal authority"); *Crime Just. & Am., Inc. v. Honea*, 876 F.3d 966, 978 (9th Cir. 2017) ("Issues raised in a brief which are not supported by argument are deemed abandoned." (quoting *Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988))). The Court also is sensitive that it should not make arguments that a party failed to make. *See Clark v. Sweeney*, 607 U.S. 7, 9 (2025) ("In our adversarial system of adjudication, we follow the principle of party presentation." (quoting *United States v. Sineneng-Smith*, 590 U.S. 371, 375 (2020)). Thus, the Court does not find this argument preserved. Nonetheless, in an abundance of caution, assuming, *arguendo*, that Respondents are making an argument that Petitioner's "past violations" require denying the Petition, such an argument fails.

To determine what process the Government must provide before depriving a person of a constitutionally protected interest,[6] courts apply the test set out in *Mathews v. Eldridge*, 424 U.S. 319, 334-35 (1976). Courts weigh: (1) the private interest at stake; (2) the risk of erroneous

---

[6] "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

deprivation through existing procedures and "the probable value, if any, of additional or substitute procedural safeguards"; and (3) the Government's interest, "including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.*

"[N]umerous courts have held that the Due Process clause entitles a noncitizen to notice and an opportunity to be heard before his parole or bond is summarily revoked under section 1226(b)." *J.C.E.P. v. Wofford*, 2025 WL 3268273, at *6 (E.D. Cal. Nov. 24, 2025) (gathering cases); *see also Nadales v. Semaia*, 2026 WL 136230, at *2 (C.D. Cal. Jan. 14, 2026) (noting that "'[s]ubstantial ink has been spilled on' the proper process to be afforded under § 1226(a)" and explaining the process due) (gathering cases) (quoting *Morales-Flores v. Lyons*, 2025 WL 3552841, at *3 (E.D. Cal. Dec. 11, 2025)). Indeed, courts have held that after a noncitizen has been released on conditional parole, due process requires a bond hearing in which an immigration judge determines that the noncitizen is a flight risk or a danger to the community before redetention is permissible under § 1226(b). *See Faizyan*, 2025 WL 3208844, at *6-8 (gathering cases). The Court agrees with the overwhelming authorities holding that after a noncitizen has been released on conditional parole, due process requires notice and a pre-deprivation hearing. *See Palacios*, 2026 WL 686138, at *7 ("The Court finds no reason to distinguish Petitioners' cases from similar cases in which ICE revoked orders of supervision without providing pre-deprivation notice or an opportunity to be heard.").

### a. Private Interest

For the first *Mathews* factor, Petitioner has a strong liberty interest in not being detained. *See Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004) (stating that "the interest in being free from physical detention by one's own government" "is the most elemental of liberty interests); *Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment—from government custody, detention,

PAGE 13 – OPINION AND ORDER

or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects."). The first *Mathews* factor weighs in Petitioner's favor.

### b. Risk of Erroneous Deprivation

For the second *Mathews* factor, in these circumstances without a pre-deprivation hearing, "the risk of erroneous deprivation is high." *Palacios*, 2026 WL 686138, at *8. For example, to justify their redetention of Petitioner, Defendants offer only the vague and carefully worded Declaration of Timothy Walsh,[7] a Deportation Officer who was "currently assigned" to the Portland office at the time he made his declaration. This evidence is both unpersuasive and insufficient.

Walsh describes five specific dates that Petitioner purportedly missed checking in through ATD. Walsh then explains that an "ISAP officer" called Petitioner and explained how to use the Smartlink system. Walsh states that Petitioner missed two more check-ins. Walsh then states: "On June 23, 2025, ERO Portland determined that Petitioner was a flight risk and made the decision to terminate his ATD status and detain him for repeated violations of his ATD program pursuant to INA § 236(b) and 8 C.F.R. § 1236.1(c)(9)." Walsh Decl. ¶ 12.

Walsh does not describe how he has personal knowledge of Petitioner's missed appointments. The Court would expect some record of this type of information, but Walsh does not describe any specific records he reviewed or provide them. He also does not explain how he has personal knowledge of the "ISAP officer's" discussion with Petitioner. Nor do Defendants explain how Walsh's description of the ISAP officer's statements to Petitioner are not hearsay.

---

[7] Petitioner moves to strike paragraphs 4-12 of Walsh's declaration as hearsay and under the best evidence rule. Respondents did not respond to Petitioner's motion to strike. The Court declines to strike these paragraphs of the Declaration but considers Petitioner's challenges when evaluating the weight of the evidence.

PAGE 14 – OPINION AND ORDER

Additionally, Walsh does not identify who at "ERO Portland" made the determination that Petitioner was a flight risk and how Walsh knows of this determination. If through documentation, then the Court would expect to see that documentation. If through out-of-court statements by some unknown person, that is hearsay. Walsh offers *no* documentation supporting *any* of his statements. He offers only a vague boilerplate statement that his declaration is based in part on "information obtained from various records and systems maintained by ICE in the regular course of business." Walsh Decl. ¶ 2.

Courts have rejected this type of "evidence" submitted in immigration habeas cases. As recently explained by U.S. District Judge Jamal N. Whitehead in the Western District of Washington,

> The risk of erroneous deprivation is further highlighted here, where the Government has provided *no documentation* related to the revocation of Petitioners' release or their detention. Indeed, the only documents the Government has submitted are Petitioners' ORECs and notices of parole; the Government cannot fully describe—much less substantiate—the alleged violations that purportedly triggered Petitioners' re-detention. *See Ramirez Tesara* [*v. Wamsley*], 800 F. Supp. 3d [1130,] 1137 [(W.D. Wash. 2025)]. The Court notes that SDDO Booth's declaration is based on his review of "various records and systems maintained by ICE in the regular course of business," Dkt. No. 21 ¶ 3, rather than personal knowledge of Petitioners' specific circumstances. Even assuming the declaration is admissible, its conclusory assertions underscore the risk of erroneous deprivation when no hearing is held.

*Palacios*, 2026 WL 686138, at *8 (emphasis in original) (case citation alteration added); *see also A.B.D. v. Wamsley*, 2026 WL 178306, at *12 (D. Or. Jan. 22, 2026) (noting that "Respondents submit no testimony or documentation from the officers who purportedly made the individualized assessments" and concluding that the submitted declaration "is not based on personal knowledge and is not credible").

PAGE 15 – OPINION AND ORDER

Additionally, Walsh's statements appear contrary to the Cancellation of Release of Recognizance form. This form was marked to indicate that "[t]he alien failed to comply with the terms of release" and not that "[t]he alien was taken into custody for removal," as would be expected if the reason Petitioner was redetained was because he failed to comply with the ISAP reporting conditions and he was thus being detained for the duration of his regular removal process to adjudicate his asylum claim. Walsh's statements are also contrary to Petitioner's TPS designation. Walsh's Declaration also is inconsistent with the fact that in late September 2024 and December 2024 when Petitioner spoke with ISAB, no one mentioned any concern about his purported multiple check-in failures and yet a few months later those failures equated to detention. Respondents do not explain any of these inconsistencies. Unless otherwise corroborated, the Court gives little weight to the Walsh Declaration.[8]

The risk of erroneous deprivation also is particularly concerning given DHS's new policy focused on detaining millions of noncitizens who otherwise would not have been subject to detention.[9] *See, e.g.*, *Rodriguez Cabrera v. Mattos*, 808 F. Supp. 3d 1159, 1169 (D. Nev. 2025)

---

[8] Even if Respondents are correct that Petitioner missed some of his check-in appointments and that violates some requirement of his parole, those "alleged violations may be relevant to a neutral decisionmaker's determination as to whether petitioner is entitled to bond, they do not eliminate petitioner's due process right to such a determination." *See Singh v. Warden*, 2026 WL 710328, at *1 n.1 (E.D. Cal. Mar. 13, 2026) (citing *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1322 (W.D. Wash. 2025)).

[9] In July 2025, ICE issued a memorandum describing a new policy. *See, e.g.*, U.S. IMMIGR. AND CUSTOMS ENF'T, Interim Guidance Regarding Detention Authority for Applications for Admission (July 8, 2025) (hereinafter "ICE Memo"), *available at* https://perma.cc/5GKM-JYGX (AILA Doc. No. 25071607). The Court in *Rodriguez* explained this new policy:

> On July 8, 2025, DHS issued a notice entitled 'Interim Guidance Regarding Detention Authority for Applicants for Admission' to all ICE Employees. The Notice indicated that DHS, in coordination with the Department of Justice, 'revisited its legal position' on the INA and determined that Section 235 [codified at § 1225], rather than Section 236 [codified at § 1226], is the applicable immigration authority for any alien present in the United States 'who has not been

PAGE 16 – OPINION AND ORDER

(describing DHS's "sweeping new policy [that] subjects *millions* of undocumented residents to prolonged detention without the opportunity for release on bond, in contravention of decades of agency practice and robust due process protections hitherto afforded to such residents to enable them to challenge the government's basis for detaining them" and explaining that "[t]he overwhelming majority of district courts across the country, including this Court, that have considered the government's new statutory interpretation have found it incorrect and unlawful" (gathering cases) (emphasis in original)); *J.M.P. v. Arteta*, 807 F. supp. 3d 265, 273 (S.D.N.Y. 2025) (granting temporary restraining order requiring the government to release noncitizen after an earlier court decision required a bond hearing and the immigration judge subsequently granted release in that bond hearing but the government engaged in unlawful "unilateral[]" and "essentially *ex parte*" conduct to refuse to release the noncitizen). The second *Mathews* factor weighs in Petitioner's favor.

### c. Government's Interest

Respondents' interest in Petitioner's redetainment is minimal. *See Ramirez Tesara*, 800 F. Supp. 3d at 1137; *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019). "Respondents have identified no legitimate interest that would support the specific detention of Petitioner" without a pre-detention hearing. *See Rodriguez Cabrera*, 808 F. Supp. 3d at 1182.

---

admitted . . . whether or not at a designated port of arrival.' Accordingly, 'it is the position of DHS that such aliens are subject to [mandatory] detention under INA § 235(b) and may not be released from ICE custody except by INA § 212(d)(5) parole.' The Notice further provides '[t]hese aliens are also ineligible for a custody redetermination hearing ('bond hearing') before an immigration judge and may not be released for the duration of their removal proceedings absent a parole by DHS. For custody purposes, these aliens are now treated in the same manner that 'arriving aliens' have historically been treated.

*Rodriguez Cabrera*, 808 F. Supp. 3d at 1168 (first two alterations added, remaining alterations in original) (footnotes omitted) (quoting ICE Memo).

PAGE 17 – OPINION AND ORDER

"Nor have Respondents claimed that providing a pre-detention hearing would be an administrative or financial burden." *Ramirez Tesara*, 800 F. Supp. 3d at 1137. The third Mathews factor supports Petitioner. Thus, even if the Court were to consider the three *Mathews* factors, they support a finding on the merits that Respondents violated Petitioner's due process rights.

## C. Remedy[10]

The Court finds that Respondents' revocation of Petitioner's conditional parole and his redetention were unlawful. Although Petitioner currently is temporarily released, that release is insufficient to protect Petitioner's Fifth Amendment due process rights. Many courts have required that noncitizens in a similar position to Petitioner must be given notice and a hearing before an immigration judge at which the government must prove by clear and convincing evidence that the noncitizen is a flight risk or a danger to the community before the noncitizen may be redetained. *See Palacios*, 2026 WL 686138, at *10-11 (gathering cases); *Faizyan*, 2025 WL 3208844, at *8 & n.6, n.7 (gathering cases); *Jimenez*, 2025 WL 2430381, at *7. Respondents have clearly stated their intention to redetain Petitioner and they have shown a pattern of conducting such detentions without providing a pre-detention hearing, despite many court orders establishing this requirement. *See, e.g.*, *Palacios*, 2026 WL 686138, at *10 ("Moreover, for months, courts in this district have repeatedly found that the Government's conduct in revoking

---

[10] To the extent this remedy is considered a permanent injunction, the Court finds that it has jurisdiction to issue such an injunction. *See Roman v. Wolf*, 977 F.3d 935, 941 (9th Cir. 2020). Petitioner has shown "(1) that [he] ha[s] suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006); *see Palacios*, 2026 WL 686138, at *10 (discussing how the elements for a permanent injunction were met for noncitizens in similar circumstances as Petitioner).

release and re-detaining non-citizens without pre-deprivation process is unconstitutional. The Government has chosen to 'respectfully disagree' with those orders and to continue its current practices. Thus, the Court agrees with Petitioners that the Government has expressed an avowed intention to continue the challenged conduct. Absent injunctive relief, Petitioners may be subject to the same due process violation again." (quotation marks and citation omitted).

The Court finds that requiring a pre-detention hearing before an immigration judge, at which the government must meet its burden under the clear and convincing standard, to be appropriate. Further, given the unique situation with Oregon not having a detention center and the Court's jurisdiction over this matter, which is hereby retained under the All Writs Act, 28 U.S.C. § 1651, the Court also orders that Respondents must provide at least 30 days' notice before removing Petitioner from the District of Oregon, unless the Court orders otherwise, through the remainder of Petitioner's removal proceedings. *See Jimenez*, 2025 WL 2430381, at *7.

## D.  Motion to Enforce Compliance

Petitioner filed his Motion shortly after filing his Petition and well before Respondents responded to or Petitioner filed his reply in support of his Petition. Due to delays caused by discovery and the lapse in appropriations, Petitioner ultimately filed his reply in support of his Petition and his reply in support of his Motion on the same day. Regarding his Motion, he limited his requested relief to an order requiring Respondents to file a statement under oath as to why Respondents believed moving Petitioner out of the District was immediately necessary, plus any relief the Court found necessary and appropriate.

Respondents argue that they have sufficiently complied with the Court's order through Walsh's declaration that provides general details about Petitioner's removal from the District and explains that Petitioner was removed swiftly because of "minimal staffing" due to the protests at

PAGE 19 – OPINION AND ORDER

the ICE building, citing newspaper articles describing protests occurring late at night and on the weekend. (Petitioner was detained early in the morning, midweek.) Petitioner moves to strike these portions of Walsh's Declaration as not based on personal knowledge and containing hearsay.

Again, Walsh did not provide evidence or a basis for his statements, other than the newspaper articles that do not, on their face, support his statements. The Court adds that as judges in this District more quickly issue initial orders requiring Respondents not to move detainees out of the District, the faster this processing to get detainees across the State's border has become.

Regardless, as discussed above, the Court is granting Petitioner's Petition. Petitioner makes no argument as to how his requested relief in his Motion, that Respondents file a declaration under oath explaining why they believed removing Petitioner outside the District of Oregon was immediately necessary, is independently relevant such that it survives after the Petition is granted. Petitioner does not even argue how such a declaration is relevant to the Court's consideration of the Petition. The Court thus finds that Petitioner's motion is moot. This is not to say that this issue may not become ripe again, for example if Respondents were to violate the Court's Order, redetain Petitioner, and again quickly remove him from the Court's jurisdiction, potentially showing a pattern of attempting to manipulate jurisdiction.

## CONCLUSION

The Court DENIES WITHOUT PREJUDICE AS MOOT Petitioner's Motion to Enforce Compliance with Court Order, ECF 10. The Court GRANTS the Petition for Writ of Habeas Corpus, ECF 1, based on Count Three and ORDERS that:

1.    Respondents' cancellation of Petitioner's original Order of Release on Recognizance was unlawful.

PAGE 20 – OPINION AND ORDER

2.      Before any redetention of Petitioner, Respondents must provide Petitioner with written notice of the reasons for revocation of his conditional parole and a hearing before an immigration judge to determine whether detention is warranted. Respondents shall bear the burden of establishing, by clear and convincing evidence, that Petitioner poses a danger to the community or a risk of flight.

3.      During the pendency of Petitioner's removal proceedings, before Respondents may remove Petitioner out of the District of Oregon, Respondents must provide Petitioner and the Court with 30 days' notice, unless the Court orders otherwise.

**IT IS SO ORDERED**.

DATED this 31st day of March, 2026.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge

PAGE 21 – OPINION AND ORDER